Good morning, counsel. If you could begin by stating your name for the record. I'm Victor Haltom, appellate counsel for Miguel Prado. This case is controlled by this Court's earlier decision in United States v. Alexander. The Alexander case was relied upon by Mr. Prado's counsel in the trial court, in the district court. It was cited and relied upon by myself in briefing before this Court. However, the Alexander case is not discussed in the government's briefing. What the government did do was recently submit to this Court a Rule 28J letter referencing the Smith case. But the Smith case just hammers home the controlling nature of Alexander in this case. The Smith case discusses Alexander and states that where the issue is the law of the case, in a case involving a Fourth Amendment suppression issue, which a district court reconsiders, then the fact that there has been a granting of a law. Let me ask you, does Alexander really stand for the proposition that the fact that this – well, there was obviously a mistrial and then we go into the second phase. Does it really stand for the fact that in that situation it will always be law of the case? Does it actually say that? No, Alexander doesn't exactly say that, but Smith does. Smith distinguished – well, Smith – Well, Smith says we're different than Alexander. For the reason that there was a mistrial between the different rulings on the Fourth Amendment issue. And that's exactly what we have in this case. But why are we even talking about law of the case? Maybe you can help me out here. It's my understanding the law of the case doctrine only applies to issues actually decided. In this case, when the government withdrew its opposition to the motion, the lower court granted it, but the district court granted the motion because it was unopposed. So it didn't decide whether the search was supported by reasonable suspicions. So why are we even concerned with law of the case? Well, I think that that does, Your Honor, constitute an actual decision or an adjudication by Judge Levy, the district court in this case, because the Fourth Amendment issue was fully briefed. It was presented to the court. The government initially opposed it, then citing to this court's panel decision in Crawford said, well, we're going to, I don't know if they said withdraw, but the government basically conceded that they lose under this court's panel decision. You need reasonable suspicion, but the lower court didn't hold that. It simply granted the motion because it was unopposed. And the motion was dealing with whether or not reasonable suspicion was required. The opposition withdrew its opposition, and so the district court just said, granted. Where was there ever a decision that there was reasonable suspicion? I think my understanding, Your Honor, is that the combination of a concession by the government, we lose on this issue, and the district court saying, very well, I agree, I grant the defense motion to suppress, that that constitutes an adjudication on the merits. When you have the government conceding, there's no need to go forward with an evidentiary hearing on the Fourth Amendment issue. It's just a blanket decision by the district court. The defense prevails on this Fourth Amendment issue. I don't see how the ---- If we accept that, then how do you get past the argument that, you know, Crawford was controlling Ninth Circuit precedent, and then it was withdrawn because the court went on bonk, and then the court, when it re-decided Crawford, really basically skirted the issue in terms of its resolution. So why isn't the case that, you know, that controlling authority changed? It's a different world at that point, and therefore the court can revisit that. I mean, apparently the concession in this case was because the government really didn't do their homework. But that being the case, but let's just say that, but they're still entitled to the fact that there was a change in Crawford after the mistrial. Why isn't that good enough? Well, the government, first of all, doesn't even argue intervening change in authority here as an exception to application of the law of the case doctrine. Crawford, of course, was a parole case. This case is probation. The Supreme Court has made clear night and day in the Sampson case that probation searches are one thing and parole searches are another. There's a much lesser degree of expectation of privacy in the parole search context. There were multiple briefs filed on this issue at the district court level, and although Mr. Prado's counsel did, after the initial panel decision by this court in Crawford was handed down, did cite to and urge the relevance of that case, it ultimately was not the decision that Mr. Prado relied upon. Mr. Prado was relying on the general unchanged principle that for a probation search, that search must be reasonable, there must be some reasonable suspicion. So the Crawford decision, and, in fact, Mr. Prado's counsel made this point in opposition to the government's motion for reconsideration. Mr. Prado's counsel stated Crawford didn't change anything. That was a parole search case. So with those facts and with the fact that the government is not even arguing before this court that there was an intervening change in the law, I don't think that that is a basis for distinguishing this case from any of the other cases where the law of the case doctrine is applied. So with that, I'm prepared to reserve the balance of my time. All right. Thank you for the argument. Good morning, Your Honors. McGregor Scott for the United States. Good morning. Distilled down to its basic essence, the defendant's argument asks this court to exalt form over substance. And the record in this matter sets out that the district court set out on a search for the truth, what was the right thing to do in the set of circumstances that he was faced with in light of the differing Crawford opinions that came down in the intervening time. The record also sets out, once the evidentiary hearing was held, that this was a completely constitutional and legal search. So you have, at the end of the day, law enforcement officers doing what we would want them to do in a search of this nature. And how do we know that? We know that because the defendant in his appeal does not even raise the constitutionality of the search that was ultimately conducted. Well, what about the counsel for the appellant, I think, argues, although maybe not completely, that Alexander stands for the proposition that it does become law the case after when you have a mistrial, which is factually the same in this case. Two things, Your Honor, in response to that. Number one, this court in the RAB case adopted the holding in Regilio out of the Seventh Circuit. Regilio specifically had the same fact pattern we have, which is motion, ruling is made, case goes to trial, mistrial, motion for reconsideration, granted, and then the case went back to trial a second time. So that holding has been adopted by the RAB court here in the Ninth Circuit. In addition to that, the distinction on Alexander is not, I would humbly submit, that there was a trial, a mistrial, and then reconsideration only. There are many distinguishing factors with respect to Alexander. And, in fact, if you look at all of the cases that are cited in the government's brief, Alexander really is the outlier. It's the great exception, and all of the others hold for the concept and the principle that the district court can reconsider these motions prior to final adjudication. Some facts that distinguish Alexander, we have different judges. One judge granted the motion to suppress evidence. A different judge granted the motion for reconsideration. The first judge, in granting the motion, actually looked at some evidence. He listened to a 9-1-1 dispatch tape, and based on the content of that tape, drew the conclusion that the defendant did not lack the mental capacity to waive his Miranda rights. But in this case, the judge didn't look at any evidence. Exactly, Your Honor, which lends more credence to his ability to go back and revisit the issue, because it has no evidentiary record before him. Why is this a revisit when he didn't make any decision as to whether or not this search was reasonable? And I don't dispute that, Your Honor. You are correct. There was no evidence presented. There were no arguments made. The government, quite candidly, prematurely assented to the defendant's motion to suppress the evidence based on the initial Crawford panel decision that came down. This is why I don't understand why we're even dealing with law as a case. Well, I don't ñ I agree with you, Your Honor. All right. I expected you to. Well, let me ñ that was a softball. Let me give you a harder ball from the appellant's standpoint. You know, putting in his position that obviously the government knows its case, it concedes that they can't meet reasonable suspicion based on they never talked to the witnesses, they didn't do anything. And now the defendant would claim to be quite prejudiced because, you know, he didn't do anything, but for that ñ what, how many months is he doing now? I believe 188. Right. And otherwise he would be doing zero, something along those lines. So is that the type of prejudice that we assess, or is it ñ Well, first, he wouldn't be doing zero because he was convicted on a separate count. And the court in setting the sentence could have considered the drugs that were suppressed in setting the sentence. The ñ there's a distinction here to be drawn, though, and that is also in the RAB case which is cited in our papers. And that is for the proposition that if the subject matter remains the same, the constitutionality of a search, and only the legal argument advanced by the government has changed, that's an entirely proper course of action for the government to undertake. So it's not a matter of once the government stipulates or agrees to that suppression motion. As long as the subject matter remains the same, which is the constitutionality of the search, the government can advance different legal arguments. That's the holding of the RAB case. All right. Are there any other questions from the panel? Unless you have other comments, we have no further questions of your position, Mr. Scott. Thank you. Just briefly, Your Honors, as to the question, Judge Nelson, that you're addressing, this ñ in terms of was there a ñ I guess a decision in the first instance, was Judge Levy's original granting of the motion to suppress a cognizable decision that gives rise to the law of the case doctrine? I think that the answer to that has to be yes, because there was a number of briefs filed in the district court on this issue. There was ñ Judge Levy, when he ultimately, on reconsideration, denied the motion to suppress, stated to government counsel something to the effect of, my goodness, we've certainly gone through a lot of rigmarole here based upon your retreat or you being too quick to retreat from the question of whether or not there was reasonable suspicion. It was a fully litigated, albeit on paper, Fourth Amendment issue. And the ñ I don't see how the mere fact that the government enters a concession right before Judge Levy issued his decision takes away from the fact that that was a fully adjudicated district court decision, which ñ By implication, are you saying? Because he made no statement on the record that there was or was not reasonable suspicion. So you're saying by the fact that he granted the motion that he, by implication, was saying there was no reasonable suspicion? Is that your argument? The government, although it later changed its position, conceded that there was no reasonable suspicion. The government stated this was a true probation search, i.e., a search conducted without individualized suspicion. The government stated that in writing to the district court. So, yes. The government stated that it now, because of the Ninth Circuit ruling, knew there had to be reasonable suspicion. They didn't attempt to prove or disprove. They simply withdrew their opposition to the motion. And what I'm trying to get at, because I couldn't find any case exactly like this, but it seemed to me that we weren't dealing with law of the case, unless you're saying that by granting the motion he was ruling substantively that there was no reasonable suspicion. Is that what your argument is? I do believe, Your Honor, that his ruling constitutes a ruling substantively that there was no reasonable suspicion. Right. If that's your position, I understand it. Thank you. And it was simply the judge accepting the government's representation that there was no reasonable suspicion and entering a ruling on the record on that basis. Thank you. All right. Thank you both for your argument. This matter will now stand submitted.
judges: Goodwin, D.W. Nelson, Callahan